THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| BLANCHE M. WALLACE, | ) | Case No. 1:13CV00087 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM DECISION AND ORDER |
| CAROLYN W. COLVIN, in her capacity as Commissioner of the Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ** * * * * * * * * * * * * * * * * * * *

## I. INTRODUCTION

Plaintiff Blanche M. Wallace filed applications[1] for Social Security benefits alleging a disability beginning on September 18, 2007 due to a closed head injury, migraine headaches, dizziness, depression, and fatigue. She later amended her onset of disability date to July 1, 2008.[2]

Her applications were denied initially and on reconsideration. After an administrative hearing, an administrative law judge ("ALJ") concluded at step four of the five-part sequential evaluation process[3], that Plaintiff was unable to perform any past

---

[1] On February 2, 2010, Ms. Wallace filed a Title II application for a period of disability and disability insurance benefits. She also protectively filed a Title XVI application for supplemental security income on February 2, 2010. She alleges disability beginning September 18, 2007 in both applications.

[2] Ms. Wallace was 47 years of age as of July 1, 2008. She has one year of college.

[3] See 20 C.F.R. § 416.920. See also Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988)

relevant work. At step five, the ALJ found that Ms. Wallace was not disabled for purposes of the Social Security Act because with her residual functional capacity, age, educations, and work experience, she could perform other jobs existing in significant numbers in the national economy. Plaintiff's request for review was denied by the Appeals Council.

Ms. Wallace now seeks judicial review of the decision of the Commissioner of Social Security denying her claim for benefits. She contends that the ALJ erred in that: (1) he improperly evaluated her credibility; (2) he improperly determined her residual function capacity; and, (3) he failed to meet his burden of proof at step five and according to his own findings, Ms. Wallace should be found disabled.

## II. STANDARD OF REVIEW

The Court reviews the ALJ's decision only to determine if the factual findings are supported by substantial evidence and if he applied the correct legal standards. *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir. 1995). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). The Court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995).

## III.  DISCUSSION

**A. Evaluation of Ms. Wallace's Credibility**.

Plaintiff first claims that the ALJ improperly evaluated her credibility because the "entire 'analysis' of Ms. Wallace's credibility is contained in one paragraph[4]" which "fails to actually consider the factors required, to explain why the ALJ concluded that specific complaints were not credible or to link the explanation to the evidence."  Open. Br. at 12.

The Court disagrees and rejects Plaintiff's position.  "'Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)(quoting *Diaz v. Secretary of Health & Human Servs*., 898 F.2d 774, 777 (10th Cir. 1990)).  Among the factors the ALJ may consider in evaluating a claimant's complaints are "the levels of [her] medication and [its] effectiveness, ... the frequency of [her] medical contacts, the nature of [her] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, ... and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Id.*  The ALJ was not required to set forth "a formalistic factor-by-factor recitation of the evidence" he relied on in evaluating Plaintiff's credibility.  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility", the credibility determination is adequate.  *Id*.  If the ALJ disbelieved claimant's

---

[4] The ALJ noted: "The claimant is not fully credible with respect to her alleged limitations and their effect on her ability to work.  The undersigned finds the severity and frequency of the claimant's alleged symptoms, are not reasonably consistent with the medical record and all other evidence - and therefore is not fully persuasive."  Tr. 20.

3

allegations, he must explain what evidence led her to conclude the claimant's allegations were not credible. *Kepler v. Chater*, 68 F. 3d. at 391.

The Court concludes that the ALJ fulfilled the above obligation. The ALJ found that "the severity and frequency of the claimant's alleged symptoms, are not reasonably consistent with the medical record and all other evidence – and therefore is not fully persuasive". Tr. 20. Specifically, the ALJ noted that Plaintiff's allegations were not fully credible because she was working part-time, and even though not substantial activity, it was a factor indicating that Plaintiff could perform easier work at substantial activity levels. The ALJ further noted that Plaintiff's alleged limitations were "not supported by any of the medical opinions given greatest weight, nor are they supported by the objective medical findings of record." (Tr. 21). The ALJ then proceeded to evaluate in detail that very evidence and why that evidence led him to conclude that the claimant's subjective complaints were not credible.[5] *See* Tr 21-25. After thoroughly reviewing the record, the Court finds nothing amounting to legal error in the ALJ's evaluation of Plaintiff's credibility.

---

[5] As one of many examples why he concluded that Plaintiff's complaints were not credible, the ALJ made the following observation from the record evidence.

> Neurologist Dr. Alan Goldman examined the claimant on May 20, 2011, which included an extensive review and discussion of her past medical records. A detailed neurologic examination showed no abnormalities (Ex. 25F/6-7). In a report co-authored by psychiatrist Dr. Trent Holmberg, who also examined the claimant, they concluded the claimant sustained a minor closed head trauma with scalp contusion on August 3, 2007 (Ex. 25F/8), and that she had a 1% whole person impairment based on workman's compensation criteria, for her headaches (Ex. 25F/10). They further concluded that the claimant's subjective symptomology exceeded her objective neurological findings (Id.).

Tr. 23.

**B. Residual Function Capacity**

Next, Plaintiff contends that the ALJ improperly determined her residual function capacity[6] because his "assessment appears as a conclusion ... with no reasoning and no citation of specific facts." Open. Br. at 13. Citing SSR 96-8p, 1996 WL 374184 (July 2, 1996), Plaintiff notes that in determining residual functional capacity, the ALJ must give a narrative discussion and explain how his conclusions are supported by the evidence.

"In determining a claimant's physical abilities, the ALJ should ... assess the nature and extent of the claimant's physical limitations and then determine the claimant's residual functional capacity for work or a regular and continuing basis." *Winfrey v. Charter*, 92 F.3d 1017, 1023 (10th Cir. 1996) (brackets and internal quotation marks omitted). This involves evaluation of the claimant's "impairment(s), and any related symptoms ... [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

After examining the record the Court concludes that in his discussion and analysis of the evidence the ALJ generally complied with the foregoing directives and adequately

---

[6]At step four, the ALJ found that Plaintiff

> has had at least the residual functional capacity to perform the full range of sedentary and light unskilled work (SSRs 83-10, 85-15), but such work could not require: --climbing or descending flights of stairs (but a few steps up or down are not precluded); –significant flexion, extension or twisting of the neck; –working around dangerous unprotected heights, machinery or chemicals; –working an area without a restroom nearby for quick access, and –work at more than a low stress level, which means a low production level (where the vocational expert has classified substantial gainful activity jobs as low, average, or hight production).

Tr. 18-19.

explained his residual functional capacity finding. *See* Tr. 19-25. In making his finding, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements .... [and the] opinion evidence in accordance with the requirements ...." Tr. 19. The Court sees no need to repeat here what the ALJ stated in his opinion. The ALJ detailed and considered the evidence before him including Plaintiff's written statements, statements of an associate and a friend, Plaintiff's own testimony which he found not credible, Plaintiff's part-time work, her medical history and other medical findings of record. *See* Tr. 19-25. Contrary to Plaintiff's assertion, the ALJ's narrative includes citation to specific facts, along with his reasoning and is much more than mere conclusion. *Id*.[7]

### C. Burden of Proof at Step Five

The Court also rejects Plaintiff's final contention that the ALJ failed to meet his burden of proof at step five of the sequential evaluation to show that there are jobs in the regional and national economies that the claimant can perform. As Defendant notes, the "ALJ posed a hypothetical question that reflected all the limitations he found credible, and ultimately included in his residual functional capacity assessment (compare Tr. 18-19, with Tr. 69-70). In response to this hypothetical question, the vocational expert identified

---

[7] *See generally, Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166 (10th Cir. 2012) ("[w]here, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense").

occupations Plaintiff could perform (Tr. 70-71)."[8]  Open. Br. at 12-13.  The Court agrees with Defendant that there was no error because the hypothetical posed comprehensively described Plaintiff's limitations.  *See Qualls v. Apfel*, 206 F.3d at 1373 (where "ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment .... the VE's answer to that question provided a proper basis for the ALJ's disability decision").

Plaintiff's suggestion that there is an unresolved conflict between the vocational expert's testimony and the DOT is also rejected.  "'[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional [and nonexertional] requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point.'" *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005) (citation omitted).  A vocational expert's experience may be a reasonable explanation for a conflict between the expert's testimony and the DOT.  *See* SSR 00-4p, 2000 WL 1898704, at *2 (December 4, 2000) ("[i]nformation about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from

---

[8] The ALJ asked the vocational expert to assume a hypothetical individual who could perform sedentary or light work, but who could not descend full flights of stairs, could not work around unprotected heights, machinery, or chemicals; would need a restroom nearby, could not do significant extension, flexion, or twisting of her neck; and was limited to lower stress work. Tr. 69-70. The vocation expert testified that such an individual could work as a medical assembler, small parts assembler, a call-out operator, and a semi-conductor bonder. Tr. 70-71. The vocational expert testified that not all of the limitations in the ALJ's hypothetical question were in the Dictionary of Occupational Titles (DOT) and, as a result, his testimony was based on his "experience in evaluating and placing individuals in jobs such at these." Tr. 71.

employers, or from a VE's or VS's experience in job placement or career counseling"). Here the ALJ made such an inquiry and the vocation expert reconciled the conflict with the DOT based on his "experience in evaluating and placing individuals in jobs such as these." Tr. 71.[9]

### IV. CONCLUSION

The Court concludes that the Commissioner's decision, that Plaintiff was not disabled within the meaning of the Social Security Act, is supported by substantial evidence of record and is not the result of any legal error which has been brought to the Court's attention.

Therefore, based on the foregoing reasons as well as the Commissioner's opposing memorandum, Plaintiff's Complaint is dismissed and the Commissioner's decision to deny Ms. Wallace's applications for Social Security benefits is affirmed.

IT IS SO ORDERED.

DATED this 7th day of May, 2014.

BY THE COURT:

*[signature]*
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[9] In his decision, the ALJ noted: "Not all limitations given in the residual functional capacity above are mentioned in the job descriptions in the DOT, but the vocational expert's experience, study, and analyses of the job market reveal that such jobs do fit the residual functional capacity in the reduced numbers noted above (SSR 00-4p)." Tr. 26.